## STATE v. B. A. WARE.

[54 South. 854.]

1. WEAPONS. *Deadly weapons. Pocket knife. Code 1906, section 1110. Constitution.*

    A pocketknife is a deadly weapon under the provisions of Code 1906, section 1110, making it a criminal offense to exhibit a deadly weapon in a rude, angry or threatening manner in the presence of three or more witnesses.

2. CONSTRUCTION OF STATUTES.

    Criminal statutes must be strictly construed and the courts have no power to add to or take from them; but this does not mean that such statutes are to be construed with such technical strictness as to defeat the purpose of ascertaining the true meaning thereof. The true meaning of statutes, when ascertained, will be enforced by the court, even to the extent of correcting errors in the language in which they are couched.

3. CODE 1906, SECTIONS 1106, 1107, 1108, 1109, 1110. *Construction.*

    The word "such" in the beginning of section 1110, Code 1906, does not limit the persons to be charged under this section to those classes of persons mentioned in sections 1106, 1107, 1108 and 1109 of Code 1906. The word "such" was inserted in section 1110 of the Code 1906 in the phrase "If any such person," through a clerical mistake and the legislature intended to make all persons subject to prosecution for vialotion of this statute.

APPEAL from the circuit court of Newton county.

HON. C. L. DOBBS, Judge.

B. A. Ware was convicted of unlawfully exhibiting a deadly weapon in a justice of the peace court and appealed to the circuit court, where he filed a demurrer to the affidavit which, being sustained by the court, the state appeals.

The facts are fully stated in the opinion of the court.

*Frank Johnston,* assistant attorney-general, for appellant.

This is an appeal by the state. The defendant was indicted for exhibiting a deadly weapon in a rude, angry and threatening manner. The indictment charges that he exhibited in a rude, angry, and threatening manner a pocket knife, which was a deadly weapon in the presence of three or more persons, not in necessary self defense. The court held this indictment to be invalid, and sustained a demurrer to the same. I refer the court to section 1110, of the Code of 1906. The averment in the indictment was that the particular knife exhibited on that occasion was a deadly weapon. In point of fact there may be pocket knives that are not deadly weapons in the usual acceptance of the term, and there are certainly many pocket knives that are as deadly a weapon as a dirk or a stiletto. On demurrer, therefore, the averment of the declaration was that this particular knife was a deadly weapon.

It may be contended that section 1110, by the use of the term "any such person," applies only to those persons named in section 1109 of the Code, which are students and teachers, and instructors or professors. I do not think this construction can be sound, for then the statute 1110 would apply to a limited class of persons, and there is no other class of persons who exhibit weapons in a rude, angry, and threatening manner, who could be proceeded against at all under the statute. I submit that the term, "any such person," must relate back to all the preceding sections inclusive of section 1103, which undoubtedly is broad enough to include all persons of every class and description. That this construction is true is shown by the fact that section 1104 refers back generally to section 1103, as does 1105, and refers to all such persons who carry a deadly weapon. Then section 1110, following the same phraseology identically declares that any such person, etc., carrying any dirk, knife or

dirk knife or other deadly weapon, the carrying of which concealed is prohibited, is guilty of the offense.

So therefore upon the clearest interpretation of section 1110, that provision relates to any such person, or to any person having or carrying any deadly weapon, the carrying of which concealed is prohibited. The provision is clearly that if any such person as this, who is carrying a concealed weapon in violation of the law exhibits the same in a rude, angry, and threatening manner in the presence of three or more persons, not in necessary self-defense, is guilty of the statutory offense.

I respectfully submit to the court that there is no rule of statutory construction which could possibly limit the application and operation of section 1110, to the particular persons described and specified in section 1109.

REED, J., delivered the opinion of the court.

An affidavit was made against appellee in a justice of the peace court, in which it was charged that he "did unlawfully exhibit a deadly weapon, to wit, a pocketknife, in the presence of three or more persons, in a rude, angry, or threatening manner, not in his necessary defense." He was convicted, and appealed to the circuit court. He filed a demurrer to the affidavit, which the court sustained.

An objection to the affidavit is that a pocketknife is not a deadly weapon within the meaning of the statute. It is well known that a pocketknife, in many cases, is deadly in its effect. In the case of *State* v. *Sims,* 80 Miss. 381, 31 So. 907, a brick was decided to be a deadly weapon. In delivering the opinion of the court in that case, TERRELL, J., said: "The most usual cases of felonious assaults that we hear of are those made by pocketknives, which are not mentioned in section 1026 of the Code, and it has never been thought that such indictments are defective because pocketknives are not described as deadly weapons by legislative authority."

The affidavit charges that the knife is a deadly weapon. This is sufficient.

It is contended in the demurrer that the word "such," in the beginning of section 1110 of the Code of 1906, limits the persons to be charged under this section to those classes of persons mentioned in sections 1109, 1108, 1107, and 1106 of the Code of 1906. It will be noted that the title to section 1110 is as follows: "The Same; Exhibiting in Rude, Angry, or Threatening Manner, etc."—and that the first part of that section reads as follows: "If any such person, having or carrying any dirk, dirk knife, sword, sword cane, or any deadly weapon, or other weapon the carrying of which concealed is prohibited, shall, in the presence of three or more persons, exhibit the same in a rude, angry, or threatening manner, not in necessary self-defense, or shall in any manner unlawfully use the same in any fight or quarrel, the person so offending, upon conviction thereof, shall be fined in a sum not exceeding five hundred dollars or be imprisoned in the county jail not exceeding three months, or both." Section 1103, Code of 1906, begins the subject of deadly weapons, and it corresponds to section 1026 of the Code of 1892. Section 1104 is a new law, being a new Code section, and first in the Code of 1906. Its subject is "Weapons Forfeited." Section 1105 corresponds to section 1027 of the Code of 1892, and is under the title: "The same; Not Applicable to Certain Persons." Section 1106 is a new Code section, under the subject: "Dealers to Keep Record of Cartridges and Weapons Sold." Section 1107 (section 1028, Code 1892) is under the subject: "The Same; Cartridges Not Sold to Infant or Drunk Person." Section 1108 (section 1029, Code 1892) is under the subject: "The Same; Father Not to Suffer Infant Son to Have or Carry." Section 1109 (section 1030, Code 1892) is under the subject: "The Same;College Students Not to Have, etc."

A careful review of the arrangement of these sections and the statement of their subjects in comparison with

the former statutes on the same subject will show that
they all relate back to the original subject, "Deadly Weap-
ons." When the codifiers inserted the two new sections,
1104 and 1106, they omitted to make the proper changes
in the headings of the other sections on the same sub-
ject. Now, referring to the word "such" in the first
line of section 1110, in the phrase "If any such person:"
This statute is under the general subject "Miscellaneous
Offenses" (article 33, section 2699, Rev. Code of 1871),
and the first phrase of the section reads: "If any per-
son." The statute in the Revised Code of 1880 (section
2804) is under the subject "Exhibiting Deadly Weap-
ons," and begins: "If any person." In the Code of
1892 (section 1031) the subject of the statute is stated
the same as in the Code of 1906, that is: "The same;
Exhibiting in Rude, Angry, or Threatening Manner,
etc."—and is under the general subject of deadly weap-
ons. The beginning of the section is: "If any person."
The word "such" appears first in section 1110 of the
Code of 1906. Why was this word "such" inserted in
the Code of 1906? Was it purposely placed there, or did
it get there by accident?

It is true that the controlling purpose in construing
legislative acts is to get at the intent and purpose of the
legislature. In the present case, why should the legisla-
ture have intended to limit the persons subject to prose-
cution for this offense to those named in the four
preceding sections? For instance, to such as college
professions? A reading of this section, including the
word "such," and limiting the persons who are liable
for prosecution thereunder as contended would make the
law practically senseless, and in fact, nullify it. It is
the rule that a penal statute should be strictly construed;
but certainly we must get at the true spirit of the stat-
ute, and should not adopt a literal reading of the same,
if it has the effect of making the law senseless and
useless. If, on the other hand, the insertion of the word

''such'' be construed as a clerical error only, the statute will read as it did in the former Codes, and follow the reading of the first section (1103) in the Code of 1906 on the general subject of deadly weapons, which begins ''Any person who carries concealed.''

It is stated in the case of *Bryant* v. *United States,* 105 Fed. 941, 45 C. C. A. 145: ''While it is true that penal statutes should be strictly construed, it is undoubtedly the duty of the courts to look to the mischief intended to be prevented, and to take into consideration the character of the remedy proposed to be applied, in doing which the mere letter must yield to the manifest spirit, and give to the provisions that measure of restriction or expansion which a sound, reasonable reading of the whole requires of each particular.'' In the case of *Earhart* v. *State,* 67 Miss. 325, 7 So. 347, it is decided as follows: ''Where the literal reading of an act striking certain words out of a section of the Code renders the Code provision senseless, and it is evident that it was not intended to nullify the law, and that a clerical error was made in expunging too many words, a view being maintainable giving effect to the act and the section as amended, by striking out only a part of the words, it will be assumed, in order to carry out the manifest purpose of the legislature, that such error was made, and the act will be construed accordingly.''

We cannot in the present case follow the reasonings and conclusions of the court in the case of *State* v. *Traylor,* 100 Miss. 544, 56 So. 521. In his dissenting opinion in that case, SMITH, J., states: ''Criminal statutes must be strictly construed, and the courts have no power to add to or take from them, or, for that matter, to add to or take from any other statute; but this does not mean that such statutes are to be construed with such technical strictness as to defeat the purpose of ascertaining the true meaning thereof. The rule is universal, so far as I am aware, that the true meaning of statutes, when

ascertained, will be. enforced by the courts, even to the extent of correcting errors in the language in which they are couched.''

We conclude that the word ''such'' was inserted in section 1110 of the Code of 1906, in the phrase ''If any such person,'' through some clerical mistake, and that it was manifestly the purpose of the legislature to make all persons subject to  prosecution for violation of the statute.

*Demurrer overruled.*